Good afternoon. My name is Anne Traum. I'm representing Robert Barfield. I'm going to try to reserve five minutes for rebuttal. Just keep my eye on the clock. My client claims that his trial and appellate counsel were ineffective. It was fairly clear, if not completely obvious, that by the close of voir dire in this case, on the record that existed, and that is one of the claims, that the voir dire was not sufficient, that my client could not get a fair trial because numerous, and I would argue that for sure, at least two jurors that were impaneled were biased. Although one of those jurors, Mr. Hadaway, stands out because he said he had a bias and was never asked nor actually stated that he could put that bias aside and be impartial. Counsel, Hadaway was a friend, as I recall, of the public defenders investigators. I would think a lot of defense lawyers would not want to ask questions and would want to keep such a juror on just because somebody who's a public defenders investigator is likely to have heard a whole lot of things about how bad the police are and how unjustly a lot of defendants are treated and how bad a lot of the DAs are and just the sort of idle chatter you hear if you hang around with defense investigators. Well, those were not the only people that he hung around with, and I think that that's one small fact in a mountain of other evidence that Mr. Hadaway stated on the record, which was that his bias, a word that he used by himself, his self-proclaimed bias, he said it twice and affirmed it at least one other time, he would, with his bias, he would favor the prosecution. Now, he also was the State Budget Director and used to be the City Manager of Carson City. I mean, those are bases. But that's not exactly what he said. Hadaway didn't say he favored the prosecution. As I remember, there was a particular witness. I think he said he was opposed to crime, and the only witness that he said if he were called to testify, give a lot of credence to what he said, was the public defender investigator. I think that may be a different juror that you're speaking about, one who was struck preemptorily, Mr. Peterson. Are you talking about his statement that I have a bias against people doing these types of things? Yes. That's where it starts. First of all, he says that his father That's what I thought. That's a bias against crime, not a bias against the defendant. But it said if there was the benefit of any doubt, he says on the same page, which is ER-164, he was asked if he could hold the government to his burden, would they have any preconceived opinion of any incident like this? I think so. If there was any benefit of the doubt, it might fall on the State side and not on the defendant's side. And then he said he thought he could keep a clear mind. And then the judge said we'll explore that later when defense counsel comes back. She characterizes what he had said earlier. This is on page 173 of the record. Mr. Hataway, one of the things that you mentioned is the sort of on the grounds all things being equal, you might go with the prosecution's portrayal of events. Is that a fair statement of your feelings? Answer. That would be a fair statement. She goes on to say, are you willing to hold the prosecution to that higher standard? His answer. I believe I could. That's a statement, by the way, that other courts have found to be equivocal. But then he follows that up, and it even gets better. I believe I could. I just said I had a bias. If the testimony results in similar type circumstances, there may be a bias there. I haven't, but I haven't heard the testimony, so I really can't say. The problem is that our claim is that the voir dire, doing voir dire, that his counsel was ineffective in developing the record because she never, one, asked him if he could set aside that bias. She then, again, instead she says, I think you said you have a bias against people shooting people. And he says, yes. Does that bias extend to anyone who uses a gun? He says no. And then he says. You're not supposed to have a bias against people shooting people? Well, the problem is that he says he has a bias that would favor the prosecution's version of events, and he never backs away from that. He never backs away from that. And the best that it gets is that when he asks could you follow the instructions, he says, again, I believe I could. That's equivocal. Then she asks, could you apply the burden of proof? And he says, if there was a failure of the prosecution to present that evidence, that's not the burden of proof. The burden of proof is the government doesn't have the burden to present some evidence. They have to present the evidence. So you didn't read the whole statement. Then he says. He says if there was a failure on the prosecution to present that evidence, I think that would be the only decision I could make, referring to an acquittal, as I understood it. Right. But I don't think that that's not a clear statement that he could apply the burden. And then the final question is, remind me. Why isn't it? Because he's talking about. Why isn't it? The burden of proof is on the prosecution. So they have to present the evidence to satisfy it. And he has to acquit if they don't present the evidence that satisfies it. Well, I think that his answer is at least ambiguous, because he's talking about a failure of prosecution to present that evidence. Yeah. The prosecution has a burden of proof. So they have to present the evidence. I'm misunderstanding you. I don't think that he ever gave. What's required of him is to give an unequivocal statement on the record that he has no bias, that he will be fair and impartial in this case. He has never. He was never asked that. He specifically said I had a bias three times, and other courts have looked to. Yeah, about people that shoot people. He said he was biased against people shooting people. That's not all that he said. You're supposed to have a bias against crime. It's just that the impartiality due under the Constitution is toward the defendant and the prosecution in the case, not as to whether you think the law should be followed. That's not all that he said, Your Honor. He also said I would favor the presentation by the prosecution. And when he gave his final question, could you apply the standard, he said yes. But we have a case that went to the Supreme Court, Martina Salazar, where the juror expressed a bias, and according to the government and the court said that he could follow the court's instruction, and that wasn't enough. That was not a statement that he could be impartial, and everyone agreed in that case. The premise of that case was that juror should have been struck for cause. That's basically what we have here. I do want to talk about Juror Prostella because I think that he is the easier juror. He definitely has a bias. It was Mr. Prostella who was the Nevada Highway Patrol employee. Now, my client was accused of shooting at two Nevada Highway Patrol troopers in Carson City who worked for the Carson City office of Nevada Highway Patrol. That is where Mr. Prostella works. The Supreme Court, Justice O'Connor in Smith v. Phillips, but there's also other cases, and I specifically noticed a case today, which was a Fifth Circuit case, that talks about how implied bias is clearly established under EDPA. Excuse me? Counsel, this is not the one who was divorced from a policeman, is it? No, no. This is the person who is a computer technician who works in the Nevada Highway Patrol office. Got it. Thanks. His name is Juror Prostella. Justice O'Connor specifically recognized in her concurrence in Smith v. Phillips and I was just saying, sorry, I got off track. I was just saying that I did notice a case today, a Fifth Circuit case that talked about implied bias being clearly established under EDPA. It's a Fifth Circuit case. It basically says you can give it to the clerk afterwards. I did give it to the clerk, yes. And you notified the government you're going to talk about it? I didn't notify them, but I talked to them before I did this research on Friday. All right. We'll take it into consideration. It basically says what this Court on Banks said in Dyer v. Calderon, but it just updates it. Dyer was a pre-EDPA case and recognized that implied bias is an extremely old doctrine, possibly one of the oldest, and this Fifth Circuit case called Brooks follows up on that and recognizes that it's clearly established for purposes of EDPA. Counsel, I would accept that if Purcell was a highway patrolman, but I thought he was just a computer operator. He is a computer operator, and that still disqualifies him. What Justice O'Connor talked about in Smith v. Phillips was a person at one of the extreme cases causing implied or inferred bias would be an actual employee of the prosecuting agency, and I think here we have a double whammy. And not only do we have someone who is an employee of the Nevada Highway Patrol, which is the law enforcement agency that referred this case to the prosecutors, so they're just one step away from being the prosecutor themselves, but we also have the NHP troopers are the victim and witnesses in this case. And although this person is a computer technician and says that he doesn't have contact with the troopers, the whole mission of the agency is to support those troopers in the field, and he said he knew Trooper Gerlani, and he also said he knew all the dispatchers, and the whole purpose of the agency is to support the troopers in the field, can you imagine this person walking back into work? He's been there five years. He walks back into work. It would be shameful to walk back into work and have voted to acquit the person who shot at two troopers in his office. This is precisely the kind of person that we're talking about when the test says that the average person in his situation could not have been impartial in this situation. Prestella is that person. And I think that there's no way the law, the whole idea of implied and inferred bias is that nothing he says can ensure that he will be impartial because it's impossible in that situation, or it's so close to impossible that that's why we infer bias. I do want to differentiate this case. This Court said in Alsup that two bank employees were disqualified, even though they actually said that they could be impartial. And those bank employees didn't even work in the same office. Now, there's a difference in the sense of Judge Kleiffel's concern that the bank employees are sort of in the line of fire of a bank robber, and so they're sort of special. They're performing different functions. They're special in that way. But those people didn't even work in the same office. And Juror Prestella does. And this is a small town in a small office where everyone knows, in particular, Mr. Durlani. That was clearly established on the record. We know that. So I think that he's clear. I also think that the other jurors are also biased, but I don't think that they're quite as crystal clear as these two jurors. And again, I would argue that Judge Don Hadaway, who said that he knew most of the sheriff's office, that he was the city manager, that he was indirectly in control of the public defender's budget, that is not a juror that you would feel comfortable striking. He also ends up being the foreman of the jury, and he said, I can't find a case where a juror expressed so clearly that he had a bias. It is very unusual that someone actually uses those words. And when someone does use those words, that's all the more reason why everyone should be on high alert to make sure that he is fully and clearly rehabilitated on the record. And the counsel simply didn't do that here. Finally, on Juror Prostella, we have the counsel saying in the post-conviction hearing that he wished that he had gotten rid of them. He was less concerned about Don Hadaway. But clearly, there's no strategic reasoning for keeping either of them, and I would submit that it's structural error anyway. And the case law on this particular issue, it basically all collapses. If there's a biased juror on that jury, there's almost never a strategic reason. Certainly, there was no strategic reason for keeping these people on the jury, and that's the end of it. He should get a new trial. I do want to touch very briefly on my intoxication. Roberts. I think Judge Larson had a question before you leave. Oh, pardon me. I guess just the big picture here is we give a lot of deference to a trial attorney's strategy in determining to exercise a make a motion for cause or exercise a peremptory. And what we're piecing together here is we're looking at this transcript kind of post hoc and saying that, gosh, there's probably a basis to remove this person for cause. And even if that is the case or even if that could be supported by the record, why can't a decision not to request the cause also be supported by that same record based on the trial attorney's perceptions at that particular time that, hey, this is not the right move to make? I mean, I don't understand how we can substitute our judgment at this point. I understand. Obviously, that's a big concern of mine, trying to set this claim up. But when you look at United States v. Hughes, the Sixth Circuit case that I cited, and Miller v. Webb, the Sixth Circuit case that I cited, and then also Virgil v. Dredke, which is the Fifth Circuit case that I cited today, it basically collapses that when there's a — when there is a biased juror, you better have a pretty good reason, strategic reason for keeping that person, because what possible strategy could you have? And I would argue there might be a strategic reason along the lines of what Judge Kleinfeld is talking about, if someone might be favorable, but there's nothing on the record. And the bottom line is he didn't have a reason. He was asked about this at the subpoena hearing. Well, it's never on the record. It's never on the record. I mean, I had a lot of jurors where I practiced law in a town, 35,000 in the town, 90,000 in the area that's marketed to by the town. And when I wanted to keep somebody on, there was nothing on the record, because I didn't want the lawyer on the other side to find out. Well, I'm not just talking about — So — Excuse me. I would think if I knew perfectly well that this juror would be great for my side, you'd never know it from the record. If you were asked about it specifically, Judge Kleinfeld, at the post-conviction hearing, there should be on the record at some point when you say, I thought it was a good idea to keep that person on. But Judge — but J.J. Jackson, the defense attorney, was asked about that specifically in his post-conviction hearing. He answers at page 10 — 1057, 1058 of the record, I would have gotten rid of the juror that worked for the Highway Patrol, and Mr. Hadaway did not concern me as greatly. Well, let me — let me take you one step back, though, because you made an assertion that when it's established that a juror is biased. Now, take your best-case scenario, Juror Prestrella. I can certainly understand your argument, and you make a very cogent argument as to that would support, perhaps, a finding of bias, if that, in fact, is what the district judge would have done, you know, remove that juror for cause. But that doesn't necessarily mean the juror is, in fact, biased. And, in fact, if we take the juror's words to heart, the juror indicates that this will have no effect on me whatsoever or something that will have no effect on his judgment in evaluating the case. Again, I think you're putting the cart before the horse a little bit. I mean, if the question before us was, could a removal for cause be sustained based on bias, you're correct. I don't know how we can find on this record that these jurors are, in fact, biased. Well, I guess the problem with Mr. Prestrella is that we are inferring bias as a matter of law, and we're doing it for the very precise reason that this Court has stated in ALSEP and that the Supreme Court has stated itself, or Justice O'Connor stated herself, in Smith v. Phillips. And she was just echoing a long line of precedent, which is that certain people are simply incompetent to serve. You are incompetent to serve on the jury that is involved in something dealing with your family. You don't need to be asked about that. And no matter what you say, you would, I'm sure, try to be as fair as possible. It's impossible for you to be fair in that situation. This is a very long – this goes back to U.S. v. Wood. This goes back to the Burr case. Certain people are incompetent to serve. And an actual employee of the prosecuting agency, which is what we have here with the prosecuting agency, but he's also connected to the victim, witnesses, all of those people. That person, it doesn't matter what you ask them. He should not be on that jury. You're down to about three and a half minutes. I will reserve my time. All right. Thank you. May it please the Court. I'm Deputy Attorney General John Warwick here representing the State of Nevada. What we're looking for is, was this jury honest and impartial? And the answers that were given by those jurors is yes. If you look at the questions they were asked, there is no hint that they were being dishonest or even untrustworthy in their responses. Okay. Counsel, could you help me a little on Prestella? Certainly. I'm impressed with Defense Counsel's argument that Prestella is an employee of the agency involved and, as a practical matter, has to go back to work with a bunch of cops after acquitting somebody for shooting two of them, if that's what the evidence comes to. If I may, Your Honor, the prosecuting agency in this instance was the Carson City District Attorney's Office. It's cutting it a little fine. The Highway Patrol is a State agency, not a county, or in this case, it's an incorporated city that has been across the border. Counsel, he's not asking the question. They're the referring agency, though. They're the referring agency. Let's get to the heart of the matter, though, though, Judge Kleinfeld's question, that she has to go back to the same agency where the crime occurred, where the victims of the crime were, and who referred the crime to the county. So what's your answer to that question in terms of why shouldn't we apply implied bias under those circumstances? Well, because the relationship is removed. He's not a family member. And when he goes back to the Highway Patrol, where does he work? He works the graveyard shift, I believe, with two other people. So it's not as if he's afraid of walking a gauntlet of Highway Patrol troopers who are going to be glaring at him and asking him, you know, how could you possibly acquit this guy? That's simply not the case. So if I were charged with a crime, it would be okay if my secretary was on the jury? Well, the secretary works directly with you. Once again, Mr. Prostella did not work directly with the officers or, and I would imagine that, your secretary would consider herself, would consider you her supervisor. So none of the troopers supervised Mr. Prostella. He's simply a computer operator at that time. It's got to get a bit fine, isn't it, in terms of what, whether a juror brings in some, something from his or her external experience that might influence the verdict? I think all jurors bring in something from their own experience. Sure. But you usually don't have friends and co-employees shot and to sit on, sit on the trial of the person who killed them. Mr. Prostella didn't go through the Highway Patrol Academy. Mr. Prostella did not report to the troopers. He worked on the administrative side of it only. Okay. I think I understand your answer. Now, let me ask you this. What was the -- Do you have an analogous case? Oh, I'm sorry. Go ahead. No, go ahead. I wanted to know if there's a case in point that's really analogous on this Prostella situation. Well, I think defense counsel pointed out the case involving the bank tellers. And the similarity there was they're doing the same work. They could identify with someone who faced a situation of a bank robbery. Or here in this case, if it was, say ---- Wait. I didn't make my question clear. You're giving me distinctions. And I want to know a case that goes your way in a factually analogous case. Off the top of my head, Your Honor, I can't recite a case at this moment, no. Okay. Thanks. Sorry to interrupt it. In our briefing, though, what we're looking for, and I think this is the important thing, is if you look at the factual determinations that were made by the state courts, and they're entitled to a presumption of correctness, that the people who were there at the time thought that the jurors were being honest and that there was no problem. And later on in the ---- I don't think there's a problem with being honest. I think they answered the question. Is the bias. Yeah. What specific findings were made with respect to the bias? I think that you would need to once again show that there was such a relationship that a person could not set aside any preconceived notions they may have had. And all these jurors were asked that. Counsel, if I didn't state my question correctly, what kind of findings were made with respect to the bias? The state factual findings were that there was no implied bias sufficient to consider the outcome of this case to really be questionable at all, Your Honor. The ---- What's the basis of that finding? You've got the record that was submitted regarding the jury transcripts themselves. And if you look at the ---- Specifically, counsel? The post-conviction evidentiary hearing, the defense attorney at ER 1032 stated that, you know, he was okay with that jury, and at that time that he didn't have or during the time of the Vordire, he didn't have problems with the jury selection. Now, once again, we have the problem of hindsight. His client was convicted. So, you know, later on down the road, of course, he could say, well, geez, if I had a chance, perhaps I should have done, you know, this in terms of asking for cause. Well, I think the question may be a little more subtle than that. It's not necessarily where we would, on direct appeal, considering this perfectly preserved. It's whether or not we think the counsel is ineffective for not striking those jurors, either attempting to by cause or through a preemptory challenge. So what in this record tells us what the strategic choice was to keep those jurors on the jury? Well, once again, I think Judge Kleinfeld touched upon that. Sometimes there's nothing on the record. No. I said, well, sure. But he we're talking about the evidentiary hearing on habeas. Of course, at the trial, as Judge Kleinfeld said, you would never necessarily, unless you had a Batson exchange, disclosure reasons for keeping or challenging a juror or asking or not asking questions. But on habeas, ineffective assistance of counsel challenges, of course, the attorney is being asked. So what's the best evidence or what is the evidence in this record that the attorney made a strategic choice as to either of these two jurors? I think that if you look at the questions around 1032, for example, except for the record 1032, you've got a situation where the defense attorney is or one of the defense attorneys has no reason to raise a challenge to cause. So by the absence of that, I think that shows that he doesn't feel that he needs to make that challenge because he feels that the jury that's going to be seated will be fair and impartial. And all these people have answered the questions that were put to them by the Court and by the attorneys. But there isn't anything on the record, and one might expect in this case, is no, I thought that juror was fair because of X, or I didn't exercise a peremptory or make a challenge because of Y, right? Well, I think you could probably go back to what's the answer to the questions that were asked, in this case the computer operator, who didn't have very much contact. I'm talking about what's in the head of the defense counsel. Right. But once again, we're delving into speculation in hindsight. Wait, counsel, we don't need to be delving into speculation. At the evidentiary hearing on habeas, I suppose the Nevada state government had reason to ask the defense lawyer in Barfield's case, why didn't you challenge Hataway? And then he could get an answer like, well, my investigator was friends with him and I knew Hataway was actually good for us. And why didn't you challenge Prestella? And he could get some answer to that. Was the question asked? Then what was the answer? I'm not sure, Your Honor. I'd have to go back and refer to the specific transcript. I know some of the recollection. Well, I assume you did that before coming to oral argument. I mean, that's what we do here. Yes, I did, Your Honor. But at the moment, I don't know. So what was the answer? He didn't have an answer, did he? There's nothing in the record indicating that he made a strategic choice with either of these two jurors, is there? Not that I can recall, Your Honor. And if there are no further questions, I would ask the lower court to uphold the verdict of the – Thank you. I guess I just want to be very brief. And first of all, honesty is not required. This Court has recognized that in the Allsup case, that the people, the women, I think there were women tellers in the Allsup case, they said that they could be fair and impartial, and nobody said that they were not being truthful. To the best of everyone's knowledge, they were. It just didn't matter because their relationship was such that they had to be disqualified. They were incompetent to serve. Isn't that what they call an implied bias? Yes. Yes, exactly. There is no strategic reason. I don't think there's any. I don't mean to be facetious about it. I just don't think there's any doubt these jurors were honest, right? Right. I mean, you haven't raised that. Right, exactly. So the only fault could be that they didn't probe far enough. But in the case of Mr. Prostella, I don't think it mattered how far they probed because once we knew who he was, anything he said, it wouldn't have mattered, whatever more he could say. Counsel, the reason that I ask my question is sometimes there are answers. Like, oh, a defense lawyer might say, yeah, I know the person. I knew that the person was a policeman or a jailer or one thing or another, where you usually preempt them. But actually, I know this guy or my client knows this guy, and we knew based on the relationship he'd be good for us. But I gather nothing like that happened in the evidentiary hearing. Is that right? That's correct. There is nothing like that with respect to Hadaway and Prostella. The closest that it gets, and he did Mr. Jackson. What would a defense counsel say precisely about Prostella? He said, I would have gotten rid of the juror that worked for the highway patrol and Mr. Hadaway did not concern me as greatly. That's it? That's it. He didn't have any kind of specific reason. He did have a specific reason for Ms. Meredith, who is the other juror that I challenged, and it was a silly reason, but he did have a reason, which is that he thought that, well, because she was divorced from the guy, that was sort of in the past. But he did have no reason with respect to Hadaway. Well, Prostella, juror Prostella is the case of implied bias. With Hadaway, you have a case where he's expressing a bias. Although, I must say, when I read the record, it looked to me just like a juror who wanted to get out of jurors' duty, jury duty. He had budgets to prepare. He was saying, well, I'm going to favor the prosecution, but I could be fair. Well, there's more, though, there, because, for example, on page 164 of the record, he says that his father was the victim of a crime where he was shot five times. There was no follow-up question. Were the people apprehended? Were they prosecuted? Was your father a witness? Was justice done? Do you have any lingering feelings about that situation? I mean, that's a clear example of sort of leaving that, letting nothing happen by ineffective assistance of counsel. Well, what were the — remind me, what were the defense lawyer's justifications and what were the State court's justifications for accepting them? Well, the State court just deferred to them, and I think the same is true of the Nevada Supreme Court. And the justifications on the jurors, Mr. — there were two defense counsel, Mr. Jackson, J.J. Jackson, who was the head of — the head PD at the time, I believe, in the office, and Ms. Claussen. Ms. Claussen didn't have any recollection as to the jurors, and I don't think she was asked specifically, name by name, as to each one. And Mr. — Mr. Jackson, that's what I cited to you on page 1057 — 1057 and 1058 of the record, where he does not have a specific explanation as to Mr. Hadaway or Prostella. With respect to Prostella, he says, I would have gotten rid of the juror that worked for the highway patrol, and Mr. Hadaway did not concern me as greatly. Now, this is, I believe, in the part of the hearing where he had reviewed at least the portions of Mr. Hadaway's — Mr. Hadaway's portion of the record, where the State is talking about the earlier portion on page 1032. That was part of a different discussion where they were talking generally about pretrial publicity, and did you think the jurors were being honest, and he sort of said, like, I — I didn't have a problem with them being dishonest. So that was a slightly different conversation that was happening earlier in the record. This is the part where he's actually talking about them directly, name by name. I know your time is over. Just a real quick question. Assuming that the motions for cause, the move for cause, had been made, and assuming that they had been granted, how would that have affected the trial? Assuming a motion for cause had been made and a motion for cause had been — and it had been granted? How would that have affected the trial? Are you talking about basically the quantum of evidence, sort of what the outcome — how the outcome would be different? Because with — this Court has said that having a biased juror on the jury is structural error, and if there's no biased juror on the jury, or if we're then talking about possibly different jurors, that's a scenario I can't predict. If there's no biased juror there, then we don't have a problem. That's not an error. There's no prejudice. Right. But I think — If there is one, then it's structural error. You have to argue structural error because the evidence in this case was fairly overwhelming. There was a lot of evidence against my client. But it was also clear that he just was not going to — I mean, we also have six jurors on the jury who had heard about this case in pretrial, from pretrial publicity. They weren't asked anything about what they heard, but we know for a fact they heard that he was a gang member from California with a carjacking, blah, blah, blah. Now you're getting a little — that would go in the area of improper rebuttal because the State didn't — No, I understand. There's just a — there's — it was clear from the outset he was not going to get a fair jury, and it was partly because he had these very biased jurors on the jury, and I don't think — and that's structural error. And that's where the ineffective assistance collapses, particularly because we have no strategic reason to defend the choices that they made. Thank you very much for your time. Any further questions? Thank you very much. The case is here to be submitted.
judges: Kleinfeld, Thomas, Larson